UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **DGCI CORPORATION,**<br>7950 Jones Branch Drive<br># 601N<br>McLean, Virginia 22102<br><br>   **Plaintiff,**<br><br>v.<br><br>**TRIPLE ARROW COMPANY FOR GENERAL TRADING CO. LTD.,**<br>MRF, Building C<br>40-meteres Road<br>Erbil, Kurdistan Region, Republic or Iraq<br><br>   **Defendant.** | No.: 1:21-cv-1174 |

## COMPLAINT

DGCI Corporation ("DGCI"), by its undersigned counsel, sets forth the following as its Complaint against Triple Arrow Company for General Trading Co. Ltd. ("Triple Arrow"):

## PRELIMINARY STATEMENT

1. This lawsuit arises under a Master Service Agreement ("MSA") between DGCI and Triple Arrow, which was negotiated and in pertinent part performed in this District. The MSA explicitly provides that any disputes between the parties are to be resolved by application of Virginia law. Moreover, the MSA contains a mandatory forum selection clause to govern any disputes between the parties. The forum selection clause provides, in the first instance, that suits concerning any disputes are to be filed in this Court (any dispute "shall be resolved exclusively at the U.S. Federal District Court for the Eastern District of Virginia, or if such court does not

have subject matter jurisdiction over the dispute, any other federal or state court of competent subject matter jurisdiction located in the Commonwealth of Virginia.") (Ex A. (MSA), at 13.3).

2. As alleged in this Complaint, a real and actual dispute exists between the parties under the MSA. Rather than comply with the clear terms of the MSA, however, Triple Arrow has brazenly violated the MSA by initiating improper legal proceedings under Iraqi law against DGCI in Iraq. A hearing in that litigation has been scheduled by an Iraqi judge for November 8, 2021.

3. The real risk of harm to DGCI here is immediate and irreparable. This is not a situation in which hypothetical or "advisory" determinations are sought. In addition to initiating the lawsuit against DGCI in Iraq instead of Virginia as the parties contractually agreed, Triple Arrow has made various extortionate threats against DGCI property and personnel in Iraq to compel DGCI to pay monies Triple Arrow claims to be owed under the MSA. These improper threats to DGCI equipment and property, as well as the harassment and threats towards DGCI personnel, have and continue to put at risk DGCI's ability to continue to fulfil its ongoing contractual obligations to U.S. Government entities (including the U.S. Armed Forces) in Iraq. Allowing Triple Arrow to seek disputed monies it claims to be owed under the MSA in Iraq (ignoring the clear provisions of the MSA that require Triple Arrow to file suit in this Court) substantially and materially changes the contract negotiated between the parties and render that contract a nullity.

4. DGCI's efforts to resolve Triple Arrow's claims over the last several months have been unavailing. Triple Arrow has utterly ignored DGCI's repeated reminders that the MSA explicitly requires that litigation of any disputed claims (DGCI denies the amounts Triple Arrow claims to be owed under the MSA) must be filed in this Court for resolution pursuant to Virginia

law.  As a result, DGCI is forced to file this declaratory judgment action to establish the rights and obligations of the parties under the MSA.  There exists an actual and substantial controversy between the parties under the MSA which is required to be litigated in this Court.  Triple Arrow's professed belief that it has claims for monies owed by DGCI pursuant to the MSA requires that any litigation over such claims must be brought in this Court for resolution in accordance with Virginia law, not by a court in Iraq applying Iraqi law.  In addition to the declaratory relief, DGCI seeks and is entitled to an order enjoining Triple Arrow from proceeding with its improper suit in Iraq or other legal proceedings against DGCI in Iraq.

## THE PARTIES

5. Plaintiff DGCI is a company duly incorporated in the Commonwealth of Virginia and having its principal place of business at 7950 Jones Branch Drive # 601N, McLean, Virginia 22102.

6. DGCI is a premier provider of global defense solutions to the U.S. Government and its partners worldwide.

7. DGCI has a long history of operating in Iraq and is one of the few U.S. fuel providers with strong relationships in the region.

8. Defendant Triple Arrow is a company duly established under the laws of Iraq, with registration number 11721/Kurdistan Region, and having its principal place of business at MRF, Building C, 40-meters Road, Erbil, Kurdistan Region, Republic of Iraq.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of costs.

10. The Court has personal jurisdiction over the parties to this action as DGCI is registered to transact business, and regularly transacts business, in Virginia. Triple Arrow has purposefully availed itself of the marketplace available in Virginia and has the necessary minimum contacts with Virginia to justify personal jurisdiction in this Court.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 22 U.S.C. § 2201, et seq., and has the inherent authority to grant injunctive relief.

## FACTUAL ALLEGATIONS

### A. The Relationship Between DGCI and Triple Arrow

12. DGCI has been awarded multiple contracts to deliver fuel in Iraq for the U.S. Armed Forces by the Defense Logistics Agency-Energy ("DLA-E").

13. DLA-E, which is the nation's combat logistics support agency, is headquartered at Ft. Belvoir in Virginia.

14. As one example, DGCI entered into Contract No. SPE600-16-D-9518 with DLA-E to provide fuel to DLA-E in Iraq (the "DLA-E Contract"). This contract was awarded on or about July 29, 2016.

15. In order to fulfill the DLA-E Contract, DGCI, as a U.S. company and a responsible government contractor, needed to enter into agreements with local Iraqi companies to assist with, among other things, logistics for the transport and delivery of fuel in-country to Erbil International Airport ("EIA") in Iraq, where the fuel delivered to DLA-E was for use by the U.S. Armed Forces.

16. DGCI has worked with a number of local Iraq subcontractors, including with an Iraqi company called the Zozik Group, which is generally engaged in the business of transportation and fuel supply in Iraq, among other things.

17. Upon information and belief, at relevant times, the Zozik Group's Managing Director in the U.S. was a U.S. resident, Ghalib Bradosti.

18. Through this relationship with Zozik and Mr. Bradosti, DGCI was introduced to Defendant Triple Arrow, which, upon information and belief, is affiliated with the Zozik Group and Mr. Bradosti.

19. DGCI and Mr. Bradosti, on behalf of Triple Arrow, negotiated terms for fuel purchases, discussed logistics for the delivery of the fuel for use by the U.S. Armed Forces in Iraq, discussed additional business opportunities, and addressed issues with the ongoing operations on-ground in Iraq, among other things. These actions in furtherance of DGCI's commercial relationship with Triple Arrow took place in both Virginia and Iraq.

20. Among other things, Triple Arrow provided the following services to DGCI in furtherance of DGCI's contract with DLA-E: managing tier-two subcontractors for fuel supply, storage, and transport; truck registrations and leasing at Erbil International Airport; base access support; local staffing support; and obtaining local licenses.

21. For a number of years, DGCI and Triple Arrow engaged in business dealings related to the DLA-E Contract under various agreements between the parties, for which Triple Arrow issued invoices to DGCI that DGCI paid.

22. DGCI initially made payments for Triple Arrow on its fuel invoices to DGCI to a U.S. bank account in the name of Ghalib Bradosti, although later, as instructed, DGCI wired funds for invoiced services to a Triple Arrow account abroad.

23. Mr. Bradosti attended in-person meetings with DGCI personnel at DGCI's offices in Virginia regarding Triple Arrow's performance on behalf of DGCI for the DLA-E Contract and other contracts for the provision of fuels in Iraq.

24. DGCI and Mr. Bradosti considered other business ventures in Virginia. For example, in or around 2014, DGCI and the Zozik Group, acting through Mr. Bradosti, created a joint venture that was registered in Virginia called Triple Arrow LLC.

25. Triple Arrow LLC was created for the purpose of bidding on government contracts to provide construction services, logistics, procurement, and base support operations. This joint venture did not perform work on the DLA-E Contract at issue in this litigation and became inactive in 2020.

**B.     DGCI and Triple Arrow Enter Into the Master Service Agreement**

26. DGCI and Triple Arrow formalized their contractual relationship under a Master Services Agreement ("MSA"), effective as of May 1, 2020, to govern the terms by which Triple Arrow had supplied and would supply goods to DGCI in Iraq. A true and correct copy of the MSA is annexed to the Complaint as Exhibit A.

27. This MSA was negotiated in good faith and at arms-length between two sophisticated contracting parties with access to legal counsel and who had a long-standing business relationship.

28. The MSA contains the following choice of law and forum selection clauses:

> 13.1 Governing Law  This Agreement, the rights and obligations of the Parties and any claims or disputes relating to this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without giving effect to its principles of conflicts of laws. The U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.
> . . . .
>
> 13.3. Disputes. The Parties shall make a good faith effort to settle amicably any claim, controversy or dispute arising under or relating to this Agreement. Absent a mutual resolution, any such claim, controversy or dispute shall be resolved exclusively at the U.S. Federal District Court for the Eastern District of Virginia, or if such court does not have subject matter jurisdiction over the dispute, any other federal or state court of competent subject matter jurisdiction located in the Commonwealth of Virginia. Each Party irrevocably and unconditionally consents to such personal jurisdiction and to waive its right to a jury trial in any action

arising under this Agreement. The prevailing Party in any action to enforce this Agreement shall be entitled to reimbursement of reasonable, documented costs and attorneys' fees incurred in connection with such enforcement.

29. The choice of law and forum selection provisions explicitly survive any termination of the MSA. (Ex. A, at 14.7 (Survival)).

30. The MSA provides that all Notices under the MSA shall be "deemed properly given if delivered by email or by personal delivery to the authorized individuals" on the signature page. (Ex. A, at 14.3 (Notices)). For Triple Arrow, the authorized individual is Mohammed Faisal Bradosti at mohammedbradosti@gmail.com. Upon information and belief, Mohammed Faisal Bradosti is the nephew of Ghalib Bradosti.

### C. The U.S. Department of Defense Deems Triple Arrow a Force Protection Threat in October 2020 Resulting in Termination of the MSA

31. On October 12, 2020, the U.S. Department of Defense ("DOD") issued an Unclassified Memorandum to deny Triple Arrow access ("Barment") to all United States Forces installations and property in Iraq because DOD assessed that Triple Arrow "poses an unacceptable risk to U.S. national interests, missions, personnel, and facilities."

32. Triple Arrow was deemed by the DOD to be a force protection threat and, as a result, Triple Arrow received a negative force protection rating from the U.S. Government via the Joint Contingency Contracting System ("JCCS").

33. On October 19, 2020, DLA-E notified DGCI by email that "Triple Arrow has been denied Installation Base Access from All United States Forces Installations and Property in Iraq." Prior to this notification, DGCI was unaware of any conduct by Triple Arrow that would have resulted in the negative force protection rating.

34. On October 20, 2020, DGCI notified Triple Arrow that the MSA was terminated as an ongoing matter effective immediately due to Triple Arrow's breach of Section 3.1(c) of the MSA, under which Triple Arrow warrants that it "will be, and shall remain . . . registered and approved in the Joint Contingency Contracting System (JCCS). . . ." (Ex. A, at 3.1(c)).

35. Triple Arrow failed to satisfactorily maintain its force protection rating, which was a material condition precedent for it to be a vendor for DGCI in DGCI's performance on behalf of the U.S. Government.

36. In addition, under the MSA, Triple Arrow was obligated to use only legitimate and ethical business practices in connection with the activities contemplated by the MSA (Ex. A, at 5.4 (Ethical Business Practices)).

37. Following Triple Arrow's failed force protection determination and the resulting termination of the MSA as an ongoing matter, DGCI initiated an audit of Triple Arrow's invoices and conduct pursuant to its right to do so under the MSA to determine whether the monies invoiced were actually owed (Ex. A, at 5.12 (Records; Audits)).

38. DGCI's audit of pre-October 2020 invoices continues, notwithstanding the complete lack of cooperation by Triple Arrow.

### D. DGCI Obtains Approval from the U.S. Government to Purchase Triple Arrow's Remaining Fuel Inventory

39. Following the termination of the MSA in October 2020, DGCI received DLA-E approval to purchase Triple Arrow's remaining jet fuel and diesel fuel inventory to offset any financial burden associated with the excess stocks occurring as a result of the negative JCCS rating.

40. By the end of August 2021, DGCI completed the purchase and drawdown of all remaining fuel stocks owned by Triple Arrow in Iraq associated with DGCI's DLA-E contracts.

41. DGCI notified Triple Arrow via a letter sent by email on August 27, 2021 (as authorized by the MSA for notices) that DGCI would pay Triple Arrow for all invoices associated with those remaining fuel stock purchases since October 21, 2020. Further, DGCI informed Triple Arrow that DGCI was attempting to audit all transactions between DGCI and Triple Arrow between July 29, 2016 and October 20, 2020 in light of Triple Arrow's negative force protecting rating.

### E. The Dispute Under the MSA Between DGCI and Triple Arrow Arises

42. Since August 2021, Triple Arrow and its Iraqi counsel have been engaged in active email correspondence with DGCI and DGCI's U.S. counsel regarding Triple Arrow's disputed claims for monies still owed under the MSA.

43. On September 1, 2021, Triple Arrow emailed a letter to DGCI which alleged that Triple Arrow had issued invoices prior to the termination of the MSA in October 2020 that had not yet been settled. Triple Arrow further indicated that it disagrees with DGCI's audit to the extent that the audit may reduce any amounts allegedly owed to Triple Arrow by DGCI. Triple Arrow concluded its letter by demanding all payments allegedly owed by DGCI, including for the period prior to termination. Upon information and belief, contemporaneously with this letter, Triple Arrow initiated its campaign of interference with DGCI property and engaged in threats to DGCI personnel in Iraq.

44. On September 8, 2021, DGCI emailed Triple Arrow in response, stating that DGCI "simply cannot tolerate interference or threats of interference in performing our mission for the US Government." DGCI specifically advised Triple Arrow that it will not capitulate to demands for payment of disputed amounts of money made in conjunction with illegal and improper threats of duress.

45. DGCI's September 8, 2021 email attached a letter from DGCI's U.S. counsel to Triple Arrow which demanded on behalf of DGCI that Triple Arrow cease and desist from taking any unlawful and improper actions directed at DGCI personnel or property wheresoever located. The letter further reminded Triple Arrow of its obligation to litigate any disputes against DGCI in the United States under the MSA: "Should you believe for whatever reason that you have legitimate grievance with DGCI, the MSA requires you to take action in the US courts in Virginia, as appropriate. We look forward to actively contesting any such claim you may make."

46. On September 15, 2021, Triple Arrow's Iraqi counsel emailed a letter to DGCI and its U.S. counsel, in which Triple Arrow rejected its clear obligation under the MSA to pursue any litigation in this Court and, indeed, acknowledged that it intended to pursue claims under the MSA in Iraq.

47. In that letter, Triple Arrow further alleged that DGCI owes Triple Arrow USD 9,443,111.24 pursuant to an alleged "oral agreement" between Triple Arrow and DGCI under which Triple Arrow could and would seek "enforcement" in the Iraqi courts.

48. There is no such oral agreement between Triple Arrow and DGCI. Under the MSA, any changes to the MSA "must be approved in writing by both Parties." (Ex. A., at 14.1 (Prior Agreements; Modifications and Waivers)). There is no such required writing.

49. Upon information and belief, Triple Arrow's Iraqi counsel appeared in person at DGCI's office at EIA in Iraq and threatened to seize four refueler trucks owned by DGCI.

50. On September 22, 2021, DGCI's U.S. counsel emailed a letter to Triple Arrow's Iraq counsel, in which DGCI rejected Triple Arrow's erroneous analysis of the terms of the MSA:

> Your analysis in your letter of the jurisdictional requirements under the MSA for any disputes between the parties is legally deficient and is rejected. The terms of

the Disputes provisions in Section 13 of the MSA, which govern "any claim, controversy or dispute arising under or relating to this Agreement," are clear, and do indeed require that United States courts in Virginia adjudicate any questions related to any payments allegedly owed by DGCI to Triple Arrow for invoices issued prior to October 2020.  These provisions survive the termintion of the MSA (Section 14.7 (Survival)), and in addition, DGCI's audit rights explicitly apply throughout the term of the MSA and "for a period of three years thereafter." (Section 5.12).  Accordingly, DGCI is at all times comporting itself in compliance with the MSA, and expects Triple Arrow to do so as well.  Your reliance on a fictious and so-called "October Agreement" is misplaced and invalid.  The only legal agreement that applies to the relationship between DGCI and Triple Arrow is the MSA.

51. This letter also provided Triple Arrow with DGCI's analysis of the amounts invoiced by Triple Arrow and paid by DGCI for the post-October 2020 time frame.  In that time, Triple Arrow issued invoices to DGCI in the amount of USD 10,692,882, and DGCI made payments to Triple Arrow in the amount of USD 11,885,241, resulting in a surplus in favor of Triple Arrow of USD 1,192,359.

52. In light of the ongoing questions raised by Triple Arrow's force protection rating, DGCI's letter of September 22, 2021 reiterated that not only were the audits authorized by the MSA, but that they were required in this situation "because DGCI cannot – and will not – remit payment to Triple Arrow of monies from the United States Government absent assurance that those monies are properly owed."  DGCI's audits continue, albeit without cooperation from Triple Arrow, as also required by the MSA.

### F. Triple Arrow Initiates Legal Proceedings in Iraq

53. On or about September 23, 2021, Triple Arrow served DGCI's representative in Iraq with a "Legal Notification."

54. An English translation of the Legal Notification states, in pertinent part:

Through this notification, you will have to refund the aforementioned amount [USD 11,093,076] to my client (the company) [Triple Arrow]; otherwise, the legal measures will be taken against your company, such as (registering a law case at the competent courts, banning travel, stopping all services, putting a

seizure sign on all your properties, and withdrawing the vehicles of filling aircraft gasoline). (If someone notifies you, don't blame him – an adage).

55. This Legal Notification, which threatens both DGCI assets and personnel, was issued by Triple Arrow's Iraq counsel, and served upon a DGCI representative in Iraq.

56. On September 27, 2021, Triple Arrow's Iraqi counsel emailed a letter to DGCI and DGCI's U.S. counsel which, among other things, stated that "there is nothing preventing Triple Arrow from protecting its rights by seeking conservatory and/or provisional measures before the competent Iraqi courts."

57. Triple Arrow has initiated legal proceedings against DGCI in Iraq seeking USD 11,093,076 in damages related to the purchase of fuel from Triple Arrow, together with Triple Arrow's legal fees.

58. On September 21, 2021, Judge Qubad Sh. Noori of the Erbil Court of First Instance issued a Legal Notification setting a court hearing in this Iraqi litigation at 9:00 a.m. on November 8, 2021.

59. Upon information and belief, DGCI was threatened by a Triple Arrow representative in Iraq that the "Asayish" would come to EIA prior to this hearing to remove all DGCI equipment and vehicles from the site. Upon information and belief, the "Asayish" is the Kurdish security organization and intelligence service for the Kurdistan Regional Government, which has control over EIA.

60. To date, DGCI, working with DLA-E and the DOD, has been able to prevent the confiscation of its personnel and equipment in Iraq by Triple Arrow or others working on behalf of Triple Arrow.

61. Upon information and belief, it is unclear whether the Iraqi court would enforce the contractual terms of the MSA, including the forum and choice of law selection provisions.

## COUNT 1 – DECLARATORY JUDGMENT

62. DGCI incorporates the allegations in paragraphs 1 – 61 of the Complaint as set forth fully herein.

63. Pursuant to 22 U.S.C. § 2201, the Court "may declare the rights and other legal relationship of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

64. The MSA is a valid and enforceable contract between DGCI and Triple Arrow.

65. Under the MSA, the rights and obligations of the parties and any claims or disputes relating to the MSA shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, and any claim, controversy or dispute shall be resolved exclusively at the U.S. Federal District Court for the Eastern District of Virginia, or if such court does not have subject matter jurisdiction over the dispute, any other federal or state court of competent subject matter jurisdiction located in the Commonwealth of Virginia.

66. Under the MSA, several provisions of the MSA explicitly survive the termination of the MSA, including the choice of law and forum selection provisions.

67. The MSA was terminated because Triple Arrow failed to satisfactorily maintain its force protection rating, which was a material condition precedent for it to be a vendor for DGCI in DGCI's performance on behalf of the DOD.

68. Pursuant to its terms, the MSA remains a fully enforceable agreement that defines the relationship between the parties notwithstanding Triple Arrow's failure to maintain its force protection rating and the subsequent termination of the MSA.

69. Triple Arrow has informed DGCI that it intends to "protect its rights" by seeking "seeking conservatory and/or provisional measures" including seizure of DGCI property to secure disputed monies Triple Arrow claims to be owing under the MSA before the Iraqi courts.

70. Upon information and belief, representatives of Triple Arrow in Iraq have made threats to representatives of DGCI in Iraq regarding DGCI property and personnel in Iraq.

71. In contravention of the explicit requirements of the MSA, Triple Arrow has followed through on its threats by initiating legal proceedings against DGCI regarding the MSA in the courts of Iraq.

72. The Iraqi court has scheduled a court hearing on Triple Arrow's lawsuit on November 8, 2021.

73. Triple Arrow's actions are unlawful and improper and are in direct violation of the material terms of the MSA.

74. As a result of Triple Arrow's wrongful conduct, a real, substantial, justiciable and actual controversy exists between two parties having adverse legal interests, and which threatens immediate harm to DGCI.

75. A judicial declaration of the parties' rights is needed with regard to: (1) the continued validity and enforceability of the MSA following termination; (2) the mandatory requirements of the MSA's forum selection and choice of law provisions requiring resolution of any disputes between the parties arising under the MSA to be litigated in this Court in accordance with Virginia law; and (3) that Triple Arrow's actions in Iraq, including initiating litigation in Iraqi courts, are improper and invalid.

WHEREFORE, DGCI respectfully requests that the Court enter judgment in favor of DGCI as follows:

A) For Count 1 in the form of an order for declaratory relief, pursuant to 28 U.S.C. § 2201, et seq., declaring that: (1) the MSA continues to be valid and enforceable following termination; (2) the requirements of the MSA's forum selection and choice of law provisions requiring resolution of any disputes between the parties arising under the MSA to be litigated in this Court under Virginia law are mandatory and enforceable; and (3) Triple Arrow's actions in Iraq, including initiating litigation in Iraqi courts, are improper and invalid;

B) For a temporary restraining order and a preliminary foreign anti-suit injunction under Federal Rule of Civil Procedure 65, prohibiting Triple Arrow from proceeding with any lawsuits or other legal proceedings against DGCI in Iraq;

C) For reasonable attorneys' fees, costs, and expenses; and

D) For such other relief as the Court deems just and proper.

Dated: October 19, 2021          Respectfully submitted,

*/s/ Joseph N. Frost*
Michael A. Branca (VSB No. 36108)
Michael C. Zisa (VSB No. 76397)
Joseph N. Frost (VSB No. 92239)
PECKAR & ABRAMSON, P.C.
2055 L Street, N.W., Suite 750
Washington, DC 20036
Telephone: (202) 293-8815
Facsimile: (202) 293-7994
mbranca@pecklaw.com
mzisa@pecklaw.com
jfrost@pecklaw.com

Thomas J. Curran (*pro hac vice* forthcoming)
tcurran@pecklaw.com
Doris D. Short (*pro hac vice* forthcoming)
dshort@pecklaw.com
Robert H. Bell (*pro hac vice* forthcoming*)*
rbell@pecklaw.com
PECKAR & ABRAMSON, P.C.
1325 Avenue of the Americas
10th Floor
New York, NY 10019
Telephone: (212) 382-0909
Facsimile: (212) 382-3456

*Attorneys for DGCI Corporation*