1

 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3   DGCI CORPORATION,              )   Case 1:21-cv-1174
                                    )
 4                  Plaintiff,      )
                                    )
 5        v.                        )   Alexandria, Virginia
                                    )   October 27, 2021
 6   TRIPLE ARROW COMPANY FOR       )   2:00 p.m.
     GENERAL TRADING CO. LTD.,      )
 7                                  )
                    Defendant.      )
 8   _____)   Pages 1 - 13

 9

      TRANSCRIPT OF MOTION FOR TEMPORARY RESTRAINING ORDER
10

          BEFORE THE HONORABLE ANTHONY J. TRENGA
11
             UNITED STATES DISTRICT COURT JUDGE
12

13   APPEARANCES:

14   FOR THE PLAINTIFF:

15        JOSEPH N. FROST, ESQUIRE
          PECKAR & ABRAMSON PC
16        2055 L Street, N.W., Suite 750
          Washington, D.C.  20036
17        (202) 293-8815

18        THOMAS J. CURRAN, ESQUIRE, *PRO HAC VICE*
          PECKAR & ABRAMSON PC
19        1325 Avenue of the Americas, 10th Floor
          New York, New York  10019
20        (212) 382-0909

21

22

23

24

25       COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES


       Rhonda  F.  Montgomery   OCR-USDC/EDVA   (703)  299-4599

 1          THE CLERK:  Civil Action 1:21-cv-1174, *DGCI*

 2 *Corporation v. Triple Arrow Company for General Trading*

 3 *Company Limited.*

 4          Counsel, will you please note your

 5 appearances for the record.

 6          MR. CURRAN:  Tom Curran, C-U-R-R-A-N, 1325

 7 Avenue of the Americas, New York, New York, 10019, for

 8 DGCI International.  With me is my associate, Joseph

 9 Frost, F-R-O-S-T.

10          THE COURT:  All right.  Welcome.

11          We're here on the plaintiff's motion for a

12 temporary restraining order.  I understand that notice

13 has been given to Triple Arrow through email exchanges

14 with its Iraqi lawyer.  Is that correct?

15          MR. CURRAN:  That is correct, Judge.

16 Actually, three times, I believe, we've sent a full set

17 of papers, including the relief sought here today.

18          THE COURT SECURITY OFFICER:  Counsel, stand

19 at the lecturn, please, so we can hear you.

20          Thank you.

21          MR. CURRAN:  I'm fully vaccinated, Judge.

22          THE COURT:  All right.  You're welcome to

23 take your mask off.

24          MR. CURRAN:  Thank you very much.  It's kind

25 of stifling.

 1          We sent a full set of all pertinent papers

 2 from the complaint to the relief sought today, Your

 3 Honor, to the Iraqi counsel with whom we have been

 4 corresponding.  We have not heard back from them.

 5          We are unaware of any U.S.-based counsel

 6 other than I'm aware that they had counsel when the

 7 underlying Master Service Agreement was negotiated, in

 8 substantial part, within this district.

 9          THE COURT:  I saw from the emails you've

10 asked them to accept service.  I take it that hasn't

11 happened yet.

12          MR. CURRAN:  We have not heard from them at

13 all, Judge.

14          THE COURT:  All right.  How do you propose

15 serving them?

16          MR. CURRAN:  We are hopeful -- we remain

17 hopeful of trying to find them in this district.  There

18 was a bank account at one point in this district, and

19 there was a -- the person who signed the Master Service

20 Agreement, Mohammed Faisal Bradosti, we believe has

21 been in this district.  Also, a person associated with

22 Triple Arrow in terms of ownership, Mohammed Faisal

23 Bradosti's uncle, Ghalib Bradosti, we believe may be in

24 this district as well.  If we are unable to, I do

25 anticipate our seeking relief from the Court in the

4

 1  form of alternative methods of service.

 2              I do note that the Master Service Agreement

 3  provides for the parties to communicate on material

 4  notice matters by email, and I do note that the Iraqi

 5  counsel has felt free to communicate with us about

 6  legal matters relating to their intentions in Iraq.

 7              THE COURT:  All right.  I've reviewed the

 8  motions papers.  Why don't you summarize for the Court

 9  the position of the plaintiff in this case.

10              MR. CURRAN:  We are well aware, Judge, the

11  relief we're seeking is sparingly granted and for good

12  reason.  That said, to put it quite plain, if not this

13  case, then when?

14              The situation that has developed in Iraq

15  despite our pleading with them, "If you have a dispute,

16  here's where it belongs pursuant to the contract," and

17  noting that they are claiming monies owed under that

18  contract.  So they're not opposed to the MSA, the

19  Master Service Agreement, at least when it serves their

20  purposes to sue in Iraq.  But that situation is the

21  very reason why the clear, plain, and mandatory

22  language relating to forum selection was placed in this

23  contract and negotiated between these two parties.

24              One of the concerns, Your Honor -- going with

25  a conservative judicial approach, one concern is

 1  international comity.  Well, granting the relief that

 2  we seek here today, Judge, I would respectfully

 3  suggest, actually promotes international comity.  It

 4  sends --

 5          This international commerce agreement,

 6  substantially negotiated at our client's offices in

 7  McLean, should not be allowed to be avoided by somebody

 8  filing strike suiting in Iraq and, as we are advised by

 9  local counsel in Iraq, have that court follow Iraqi law

10  as evidently is its intention on November 8 when

11  they've scheduled a hearing.  That's precisely the

12  situation that was specifically negotiated out of this

13  contract.

14          If there are to be disputes, as we have said

15  to our adversaries in Iraq, that's fine.  We understand

16  you have a dispute.  If you want to file something,

17  please do it in accordance with the MSA, in the first

18  instance, in the federal district court in the Eastern

19  District of Virginia.  They have not, obviously, heeded

20  our requests.

21          All the factors that we've seen, in all the

22  courts, we meet.  This is for the protection of this

23  Court's jurisdiction, which the parties provided by

24  forum selection, the forum selection clause being

25  regularly enforced by this circuit.

 1          Although this isn't a Rule 65 standard, we

 2   believe we meet that too.   There is ongoing harm which

 3   will become irreparable -- and it is certainly

 4   immediate -- going on in Iraq.   We've had a lawyer for

 5   Triple Arrow show up at DGCI's offices there and

 6   announce that he'll be coming back with members of the

 7   local intelligence security agency in the Kurdistan

 8   Regional Government and start seizing things.

 9          We've had employees hiding in their apartment

10   because of threats.

11          Triple Arrow had been a sponsor locally for

12   visas for some of our employees.   They endeavored to

13   lift those visas.   We found replacement sponsors.

14          We've been assisted somewhat by the

15   Department of Defense representatives on the ground but

16   not wholly.   And all of this is exactly why the forum

17   selection clause and the choice of law clause were

18   placed in this contract and mandatorily so.

19          We've proceeded in a measured way, I believe,

20   Your Honor.   We seek a declaration that that clause is

21   valid just as the rest of the contract is valid.   The

22   disputed amounts to be paid under that contract were

23   valid according to Triple Arrow, witness the fact that

24   they are claiming those monies under the Master Service

25   Agreement.

 1              We seek a determination that the entire

 2   Master Service Agreement is valid, that they cease this

 3   litigation effort there and bring it here.

 4              We have not brought a strike contract

 5   violation breach of contract multi-count complaint in

 6   this district, Judge.  We still remain hopeful, as we

 7   also exercise our right under the MSA, to audit the

 8   transactions, which we have to do.

 9              Once their force protection rating was

10   canceled by the Department of Defense for reasons we

11   don't know, we have to audit the contract and the

12   conduct of the parties under it.  Because the

13   alternative is paying Triple Arrow U.S. government

14   monies which aren't ours to pay unless certain things

15   exist.  And ethical business practices, compliance with

16   the Foreign Corrupt Practices Act, all of these things

17   were warranted by Triple Arrow in the Master Service

18   Agreement.  We have to audit in order to be satisfied

19   that that remains so.

20              I note that Triple Arrow is not cooperating

21   at all with our efforts to audit, which is a fairly

22   complicated process, which I can endeavor to explain if

23   Your Honor wishes.

24              I note that they have no problem with the

25   right that DGCI has to audit under the contract so long

1  as it doesn't detract from moneys they claim to be

2  owed, which kind of is the point of the right to audit,

3  frankly.

4          The Court's jurisdiction -- we believe

5  international comities actually promoted the Court's

6  jurisdiction -- is to be protected.  We believe equity

7  is clearly on the side of DGCI in this regard.  We're

8  asking for a temporary restraining order.  We're

9  hopeful that on the 17th we come back before Your Honor

10 for a full-fledged hearing and that Triple Arrow shows

11 up.

12          You know, this was -- although a measured

13 approach, to be quite candid with the Court, we did

14 choose a measured approach here of a declaratory

15 judgment with injunctive relief sought in support of

16 it.  It was also something of a risk, frankly, Judge,

17 because I don't know what the reaction will be in Iraq

18 if they perceive that the United States court isn't

19 upholding the Master Service Agreement and they can do

20 what they wish on November 8.

21          I do know that the Iraqi counsel has advised

22 me that they don't know what the Iraqi court is going

23 to do.  In all likelihood, they will look to the Iraqi

24 law and Iraqi remedies to be provided to Triple Arrow,

25 which is exactly why this clear, plain, mandatory

 1  language relating to forum selection and choice of law.

 2  That's why it's in this contract, Judge.

 3          THE COURT:  What are you anticipating --

 4  maybe this is what you're speaking to -- happening on

 5  November 8?  Is it a hearing on the merits?  Is it a

 6  hearing to schedule?  Is it a combination?

 7          MR. CURRAN:  I have asked these very

 8  questions, Judge, in anticipation that Your Honor might

 9  ask.  I can give you the answers that I received, which

10  are not entirely satisfactory and much less clear.  I

11  was told, "We're not sure."  I was told that Triple

12  Arrow was a prominent citizen and corporate citizen in

13  the region, that that will entitle them to some

14  deference by the court.  And I was told that the court

15  will likely apply Iraqi law, which is exactly what the

16  agreement was crafted to avoid.

17          THE COURT:  All right.  You've scheduled a

18  preliminary injunction on November 17?

19          MR. CURRAN:  That is correct.  Your Honor

20  granted us that date, yes.

21          THE COURT:  Right.  Looking at this, the TRO

22  can last only 14 days unless it's renewed.  So if the

23  Court grants the TRO, you will have to come in on or

24  before the 14th and for good cause have it extended.

25          MR. CURRAN:  I had a very pleasant drive here

10

 1  today, Judge.   I'm glad to do so provided I don't miss

 2  any of my daughter's field hockey playoffs, which I'm

 3  doing today.

 4              THE COURT:   Well, I'm sorry to hear that.

 5              Anything else on that?

 6              MR. CURRAN:   Nothing, Your Honor.

 7              THE COURT:   All right.   The Court has

 8  reviewed the plaintiff's motion for a temporary

 9  restraining order.   Based on the information available

10  to it and the submissions that have been provided,

11  including the declarations under oath, the Court finds

12  that the plaintiff, DGCI Corporation, has made out a

13  case for a temporary restraining order.

14              First, the plaintiff has made a clear showing

15  that it's likely to succeed on its claim that the

16  defendant is required to litigate any disputes in this

17  court.   The mandatory forum selection clause that is in

18  the Master Service Agreement appears to be enforceable

19  in all respects.   The forum selection clause appears to

20  have a reasonable relationship to the parties and the

21  dispute and the selected forum.   The plaintiff's

22  headquarters is in McLean, Virginia.   The defendant is

23  affiliated with an individual named Mr. Bradosti, who

24  appears to be a U.S. resident.   The contract was

25  substantially negotiated here in the United States, and

11

 1   the contract concerns field deliveries for U.S. armed

 2   forces in Iraq that were awarded to DGCI by the U.S.

 3   government.   The clause also clearly covers the issues

 4   that appear to be being addressed in the Iraqi action.

 5            Second, DGCI has made a sufficient showing

 6   that it has or will be threatened or experience

 7   irreparable harm if the temporary restraining order is

 8   not ordered.   In that regard, absent injunctive relief,

 9   the forum selection clause does become essentially a

10   nullity, and the plaintiffs could be subjected to

11   expenses and other consequences that the clause was

12   clearly intended to prevent, as well as the

13   inconsistent determinations by different courts,

14   particularly since a hearing in the related case is

15   scheduled for November 8, 2021.

16            Third, for essentially the same reasons, the

17   Court finds that the balance of equities favor DGCI

18   given the injuries that may be experienced as a result

19   of the defendant's breach of that contract and the

20   forum selection clause, all of which was freely entered

21   into and through which the defendant appears to have

22   already received fully, in large part, the benefits of

23   that contract under which the plaintiff appears to have

24   substantially, if not fully, performed.

25            Fourth, the injunction.   The Court finds that

1    the temporary restraining order would be in the public

2    interest by enforcing the private contract between both

3    parties, particularly in the context of this contract

4    that involves, in addition, the interest of the United

5    States government and the national defense and also the

6    need to maintain the confidence and the enforceability

7    of private contracts even within the international

8    context.

9            Finally, as to comity concerns regarding the

10   anti-suit injunction, the Court does recognize that the

11   interest of Iraq in adjudicating claims is a relevant

12   consideration.  However, the Master Service Agreement

13   is a contract between private parties and does not

14   appear to implicate any Iraqi government interests or

15   governmental persons but, on the contrary, centrally

16   involves the interest of the United States.

17           So for these reasons, the motion for a

18   temporary restraining order is granted, and Defendant

19   Triple Arrow, its agents, service employees, and

20   attorneys and those other persons who are in active

21   concert or participation with those persons are

22   enjoined from proceeding with any lawsuits or other

23   legal proceedings against the plaintiff, DGCI, in Iraq

24   or any other jurisdiction other than this court.

25           The Court is also going to require, pursuant

 1  to Rule 65, that the plaintiff post a $1,000 bond by

 2  cash or check.

 3          The Court will also schedule a hearing on a

 4  preliminary injunction for November 17 at 10:00.  I

 5  believe that's what we scheduled it for.

 6          MR. CURRAN:  I believe so, Judge.

 7          THE COURT:  All right, at 10:00.

 8          The plaintiff shall serve a copy of this

 9  order personally on a representative of the defendant.

10          All right.  The Court will try to get an

11  order out here within the next hour or so.

12          MR. CURRAN:  Thank you so much, Judge.  I

13  appreciate it.  I appreciate everyone's time.

14          THE COURT:  All right.  Anything else?

15          MR. CURRAN:  Nothing.

16          THE COURT:  All right.  Very good.  Thank

17  you.

18          The Court will stand in recess.

19          -----------------------------------
                    Time:  2:22 p.m.
20

21
        I certify that the foregoing is a true and
22
     accurate transcription of my stenographic notes.
23

24
                                   _____/s/_____
25                                 Rhonda F. Montgomery, CCR, RPR