# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| DGCI CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>TRIPLE ARROW COMPANY FOR )<br>GENERAL TRADING CO. LTD., )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 1:21-cv-1174 (AJT/TCB) |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff DGCI Corporation's ("Plaintiff" or "DGCI") Motion for Default Judgment and Permanent Injunction.[1] (Dkt. 45.) For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiff's motion.

### I. BACKGROUND

#### A.   Procedural Posture

Plaintiff filed this lawsuit against Defendant Triple Arrow Company for General Grading Co. Ltd. ("Defendant" or "Triple Arrow") on October 19, 2021 seeking declaratory relief for

---

[1] The relevant filings before the undersigned include Plaintiff's Complaint (Dkt. 1) ("Compl."); Plaintiff's Memorandum of Law in Support of DGCI Corporation's Motion for an Anti-Suit Injunction (Dkt. 14); the Court's Memorandum Opinion granting the Preliminary Foreign Anti-Suit Injunction (Dkt. 39); Plaintiff's Motion for Default Judgment and Permanent Injunction ("Mot. Default J.") (Dkt. 45); Plaintiff's Memorandum of Law in Support of DGCI Corporation's Motion for Default Judgment and Permanent Injunction ("Mem. Supp.") (Dkt. 46); the Declaration of Robert H. Bell in Support of Plaintiff's Motion for Default Judgment and Permanent Injunction ("Bell Decl.") (Dkt. 46-1); and all attachments and exhibits submitted with those filings.

violating the forum selection clause in the parties' Master Services Agreement ("MSA"). (Dkt. 1.) Plaintiff filed a motion for temporary restraining order and a motion for a preliminary injunction on October 20, 2021. (Dkts. 11, 13.) The Honorable District Judge Anthony J. Trenga granted Plaintiff's motion for a temporary restraining order on October 27, 2021, enjoining Defendant "from proceeding with any lawsuits or other legal proceedings against DGCI in Iraq or any other jurisdiction other than this [C]ourt." (Dkt. 22.) Judge Trenga extended this temporary restraining on November 10, 2021. (Dkt. 30.)

The Court granted Plaintiff leave to serve Defendant by alternative means (email) on November 16, 2021. (Dkt. 35.) Plaintiff filed a certification of Counsel on November 18, 2021, demonstrating that the Complaint and Summons were served on Defendant by email pursuant to the Court's Order. (Bell Decl. at Ex A; Dkt. 37.) Plaintiff also personally served Ghalib Bradosti, believed to be the agent of Triple Arrow, at his Bethesda, Maryland home on November 5, 2021. (Bell Decl. at Ex. B; Dkt. 38.) On November 19, 2021, Judge Trenga granted Plaintiff's motion for preliminary injunction and anti-suit injunction, enjoining "Defendant Triple Arrow . . . from proceeding with any lawsuits or other legal proceedings against DGCI in Iraq or any other jurisdiction other than this Court." (Dkt. 39.) Pursuant to the preliminary injunction order, Plaintiff served Defendant with the temporary restraining orders and preliminary injunction order by email on October 28, November 12, and November 22, 2021 respectively. (Dkt. 39; Bell Decl. at Exs. C-E.)

After Defendant failed to enter an appearance or respond in any fashion, Plaintiff requested the clerk's entry of default on May 19, 2022. (Dkt. 43.) The clerk then entered the default of Defendants on June 14, 2022. (Dkt. 44.) Plaintiff filed the instant Motion for Default Judgment and Permanent Injunction on June 17, 2022 (Dkts. 45, 46) and set the matter for a hearing on

Friday, August 12, 2022 (Dkt. 19). After a representative for Defendant failed to appear or otherwise respond at the hearing, the undersigned took this matter under advisement to issue this Report and Recommendation.

### B. Jurisdiction and Venue

Before the Court can render default judgment, it must have subject-matter and personal jurisdiction over the defaulting party, and venue must be proper.

*First*, the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). A federal district court has subject-matter jurisdiction when a dispute involves "citizens of a State and citizens or subjects of a foreign state" and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(2). Here, Plaintiff is a Virginia corporation with a principal place of business in Virginia, located at 7950 Jones Branch Drive #601N, McLean, Virginia 22102. (Compl. ¶ 5.) Defendant Triple Arrow is a company established under Iraqi law, has a registration number 11721/Kurdistan Region, and has a principal place of business located at MRF, Building C, 40-meters Road, Erbil, Kurdistan Region, Republic of Iraq. (Compl. ¶ 8.) While Plaintiff does not seek monetary relief here, the underlying dispute arising from the MSA involves at least $11,885,241 in disputed invoices. (Compl. ¶ 51.) Therefore, the amount in controversy in Triple Arrow's Iraqi suit to enforce the MSA underlying Plaintiff's instant declaratory judgment action exceeds $75,000.00. (*See* Compl. ¶ 47.) Because Plaintiff is a citizen of Virginia, Defendant is a foreign citizen, and the amount in controversy exceeds $75,000, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

*Second*, the Court has personal jurisdiction over Defendant. The standards of federal due process and the forum state's long-arm statute must be satisfied for a federal court to have personal

3

jurisdiction over a party. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Further, "a defendant should be able to anticipate being brought to court in the forum, in that the contacts must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Virginia's long-arm statute, Virginia Code section 8.01-328.1, provides for personal jurisdiction to the extent that federal due process permits. *Id.* With federal due process and Virginia's long-arm statute requiring the same standard, essentially only one inquiry is required. *See id.*

Furthermore, a court may either have specific jurisdiction, which arises when the defendant's contacts with the forum state give rise to the basis of the lawsuit, or general jurisdiction, which arises when the defendant is domiciled in the forum state or if the defendant has affiliations with the state that are so "continuous and systematic" as to render the party "essentially at home." *Fireclean LLC v. Tuohy*, No. 1:16-cv-294-JJC-MSN, 2016 WL 4414845, at *2 (E.D. Va. June 14, 2016) (citation omitted); *see also Tire Eng'g*, 682 F.3d at 301 (citation omitted).

Here, the Court has specific jurisdiction over Defendant. The MSA includes a forum selection clause, which provides:

> 13.3 <u>Disputes</u>. The Parties shall make a good effort to settle amicably any claim, controversy, or dispute arising under or relating to this Agreement. Absent a mutual resolution, any such claim, controversy or dispute shall be resolved exclusively at the U.S. Federal District Court for the Eastern District of Virginia, or if such court does not have subject matter jurisdiction over the dispute, any

4

other federal or state court of competent subject matter jurisdiction located in the Commonwealth of Virginia. Each Party irrevocably and unconditionally consents to such personal jurisdiction and to waive its right to a jury trial in any action arising under this Agreement. The prevailing Party in any action to enforce this Agreement shall be entitled to reimbursement of reasonable, documented costs and attorneys' fees incurred in connection with such enforcement.

(Compl., Ex. A.) Virginia's long-arm statute confers jurisdiction over a defendant who transacts any business in Virginia. V.A. Code Ann. § 8.01-328.1(A)(1). Accordingly, Defendants have availed themselves to this Court's specific jurisdiction.

*Lastly*, Plaintiff filed this lawsuit in the proper venue. Under 28 U.S.C. § 1391(b), venue is proper in a judicial district (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located; or (2) "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). Here, venue is proper under the second provision, as the parties agreed to the forum selection clause, which requires he parties to litigate disputes in this Court. (Compl. ¶ 11.)

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served.

Federal Rule of Civil Procedure 4(f) governs serving an individual in a foreign country. *See* Fed. R. Civ. P. 4(f). Of relevance here, the Rule allows a plaintiff to serve an individual in a foreign country by "means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).[2] As mentioned above, Plaintiff filed a Motion for Leave to Serve by Email and

---

[2] The Rules explicitly contemplate methods of service that have been internationally agreed upon, such as the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Iraq is not a signatory to the Hague Convention or any other international agreement prohibiting service by email.

Publication and supporting memorandum. (Dkts. 33, 34.) Plaintiff's memorandum explained that Plaintiff "has made multiple attempts to provide notice of these proceedings and the temporary restraining order to Triple Arrow" and has corresponded with Triple Arrow's Iraqi counsel about the dispute underlying the MSA. (Dkt. 34 at 2.) Plaintiff's motion requested leave to serve process by email, arguing that service by email is not prohibited by international agreement and is reasonably calculated under the circumstances to apprise Defendant of the action. (*Id.* at 3-6.) Plaintiff further argued that Defendant has knowledge of this United States suit because "it consented to exclusive jurisdiction over such lawsuits in the MSA, engaged in active email communications regarding the dispute under the MSA between the parties prior to the filing of this lawsuit, and indeed, has already been provided with a copy of the Summons and Complaint and other pleadings and orders in this lawsuit via email." (*Id.* at 5.)

The Court granted Plaintiff's motion on November 16, 2021, authorizing service on Defendant through email. (*See* Dkt. 35.) Specifically, the Court ordered Plaintiff to serve the Summons and Complaint and other pleadings on Defendant via email. (*Id.*) The order further advised Defendant of the nature of the matter, how to respond, the time in which to respond, and the potential consequences of not responding to the lawsuit, including default judgment. (*See id.*)

Plaintiff complied with the Court's order. First, Plaintiff filed a Motion for Clerk's Entry of Default with an accompanying Declaration of Robert H. Bell for Entry of Default. (Dkt. 43.) The Request demonstrated that Plaintiff emailed the Complaint and Summons to Defendant on November 16, 2021 and that Certification of Counsel was filed on November 18, 2021. (Dkt. 37.) Plaintiff has demonstrated that it complied with the Court's order. Accordingly, the undersigned finds that Plaintiff effected proper service of process pursuant to Federal Rule of Civil Procedure 4(f) and the Court's order.

II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts.

A. **DGCI Engages Triple Arrow as a Subcontractor for DGCI's Business in Iraq**

DGCI provides global defense solutions to the U.S. Government. (Compl. ¶ 6.) DGCI has a history of operating in Iraq and is one of the few fuel providers with strong relationships in the region. (Compl. ¶ 7.) The Defense Logistics Agency-Energy ("DLA-E"), the nation's combat logistics support agency located in Ft. Belvoir, Virginia, has awarded DGCI multiple contracts to deliver fuel in Iraq for the U.S. Armed Forces. (Compl. ¶ 13.) For example, DGCI entered into Contract No. SPE600-16-D-9518 ("DLA-E Contract") on or about July 29, 2016 to provide fuel to DLA-E in Iraq. (Compl. ¶ 14.) In furtherance of the DLA-E Contract, DGCI engaged with local Iraqi subcontractors, such as Zozik Group, to assist with the logistics and transportation of the fuel to the Erbil International Airport ("EIA") in Iraq for use by the U.S. Armed Forces. (Compl. ¶ 15.) Zozik Group is an Iraqi company that engages in the business of transportation and fuel supply. (Compl. ¶ 16.) Ghalib Bradosti, a U.S. resident, was the Zozik Group's U.S. Managing Director. (Compl. 17.) DGCI was introduced to Defendant Triple Arrow through its relationship with Zozik Group and Ghalib Bradosti, who, upon information and belief, are affiliated with Triple Arrow. (Compl. ¶ 18.)

On behalf of Triple Arrow, DGCI and Bradosti engaged in multiple actions to further DGCI and Triple Arrow's commercial relationship in Virginia and Iraq. (Compl. ¶ 19.) DGCI and Bradosti negotiated fuel purchase terms, discussed fuel delivery logistics, explored additional business opportunities, and addressed issues with the ongoing operations in Iraq. (*Id.*) To assist DGCI to perform the DLA-E, Triple Arrow managed tier-two subcontractors for fuel supply,

storage, and transport; truck registrations and leasing at EIA; base access support; local staffing support; and local licensing. (Compl. ¶ 20.) DGCI and Triple Arrow engaged in multiple business dealings related to the DLA-E Contract for several years. (Compl. ¶ 21.) Triple Arrow issues invoices for these agreements, which DGCI paid. (*Id.*) To pay the invoices, DGCI sent the payments to a bank account under Ghalib Bradosti's name, and later wired funds to a Triple Arrow account abroad, as instructed. (Compl. ¶ 22.) Ghalib Bradosti attended in-person meetings with DGCI personnel at DGCI's Virginia office regarding Triple Arrow's performance in providing fuels as a subcontractor for the DLA-E Contract and other fuel contracts in Iraq. (Compl. ¶ 23.)

### B. DGCI and Triple Arrow Enter Into the MSA, Containing a Mandatory Forum Selection Clause for the Eastern District of Virginia

DGCI and Triple Arrow entered into the MSA on May 1, 2022, which set out the written terms by which Triple Arrow would supply goods to DGCI in Iraq. (Compl. ¶ 26.) The MSA was negotiated in good faith and at arm's length between two sophisticated parties with a longstanding business relationship and access to legal counsel. (Compl. ¶ 27.) The Choice of Law provision in the MSA states:

> 13.1 Governing Law. This Agreement, the rights and obligations of the Parties and any claims or disputes relating to this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without giving effect to its principles of conflicts of laws. The U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.

(Compl. ¶ 28, Ex. A.) And the forum selection clause provides:

> 13.3. Disputes. The Parties shall make a good faith effort to settle amicably any claim, controversy or dispute arising under or relating to this Agreement. Absent a mutual resolution, any such claim, controversy or dispute shall be resolved exclusively at the U.S. Federal District Court for the Eastern District of Virginia, or if such court does not have subject matter jurisdiction over the dispute, any other federal or state court of competent subject matter jurisdiction

> located in the Commonwealth of Virginia. Each Party irrevocably and unconditionally consents to such personal jurisdiction and to waive its right to a jury trial in any action.

The MSA explicitly provides that these provisions survive any termination of the MSA. (Compl. ¶ 29, Ex. A. at 14.7 (Survival).) The MSA's Notice provision also provides Notices shall be "deemed properly given if delivered by email or personal delivery to the authorized individuals" on the signature page. (Compl. ¶ 30, Ex. A. at 14.3 (Notices).) Mohammed Faisal Bradosti, believed to be Ghalib Bradosti's nephew, is the authorized individual to receive the email notices for Triple Arrow at mohammedbradosti@gmail.com. (Compl. ¶ 30.)

### C. The U.S. Department of Defense Deems Triple Arrow a Force Protection Threat in October 2020 Resulting in Termination of the MSA

The U.S. Department of Defense ("DOD") issued an unclassified directive on October 12, 2022. DOD's directive denied Triple Arrow Access ("Barment") to all U.S. Force installations and property in Iraq because Triple Arrow "poses an unacceptable risk to U.S. national interests, missions, personnel, and facilities." (Compl. ¶ 31.) DOD deemed Triple Arrow to be a force protection threat, and the company received a negative force protection rating from the U.S. via the Joint Contingency Contracting System ("JCCS"). (Compl. ¶¶ 31-32.) DLA-E notified DGCI on October 19, 2022 that "Triple Arrow has been denied Installation Base Access from All United States Forces Installations and Property in Iraq." (Compl. ¶ 33.) DGCI was not aware of any conduct prior to this notification that would have resulted in Triple Arrow receiving a negative force protection rating. (Compl. ¶ 33.)

DGCI notified Triple Arrow on October 20, 2020 that the MSA was terminated as an ongoing matter effective immediately for breaching the agreement. Specifically, Triple Arrow breached Section 3.1(c), which warrants that Triple Arrow "will be, and shall remain . . . registered and approved in the Joint Contingency Contracting System (JCCS). . . ." (Compl. ¶ 34, Ex. A at

9

3.1(c).) This section required Triple Arrow to satisfactorily maintain its force protection rating as a material condition precedent to qualify as a vendor in furtherance of DGCI's DLA-E Contract with the U.S. Government. (Compl. ¶ 35.) Additionally, Section 5.4 of the MSA required Triple Arrow to use only legitimate and ethical business practices when engaging in activities contemplated by the MSA. (Compl. ¶ 36, Ex. A. § 5.4 (Ethical Business Practices).) After Triple Arrow received the negative force protection rating and DGCI terminated the MSA, DGCI began an audit of Triple Arrow's invoices and conduct prior to October 20, 2020 to verify whether DGCI owed the monies that Triple Arrow invoiced. (Compl. ¶ 37.) DGCI's audit is pursuant to the MSA and remains ongoing despite Triple Arrow's refusal to cooperate. (Compl. ¶¶ 37, 38.)

### D. DGCI Obtains Approval from the U.S. Government to Purchase Triple Arrow's Remaining Fuel Inventory

After the termination of the MSA in October 2022, DLA-E approved DGCI's request to purchase Triple Arrow's remaining jet and diesel fuel inventory. (Compl. ¶ 39.) DGCI sought to offset any financial burden associated with the excess stocks resulting from Triple Arrow's negative force protection rating. (*Id.*) DGCI completed the purchase of Triple Arrow's remaining fuel inventory in Iraq associated with the DLA-E contracts by August 2021. (Comp. ¶ 40.) DGCI emailed a letter to Triple Arrow notifying that DGCI would pay all invoices for the post-termination fuel stock purchases. (Compl. ¶ 41.) DGCI further informed Triple Arrow that DGCI was auditing the transactions between July 29, 2016 and October 20, 2020, considering Triple Arrow's negative force protection rating. (*Id.*)

### E. The Dispute Under the MSA Between DGCI and Triple Arrow

Triple Arrow and its Iraqi counsel and DGCI and its counsel have been engaged in email correspondence regarding Triple Arrow's disputed claims for unpaid invoices under the MSA. (Compl. ¶ 42.) Triple Arrow emailed a letter to DGCI on September 1, 2021 alleging that it issued

invoices to DGCI for purchases made prior to the termination of the MSA that had not been settled. (Compl. ¶ 43.) Triple Arrow's letter also stated that it disagrees with DGCI's audit if it would reduce the amount DGCI owes Triple Arrow. (Compl. ¶ 43.) The letter concluded by demanding that DGCI complete all payments, including for invoices issued prior to the termination of the MSA. (Compl. ¶ 43.) Thereafter, Triple Arrow thereafter began threatening DGCI personnel in Iraq and interfering with DGCI property. (Compl. ¶ 43.)

DGCI replied to this email on September 8, 2021, stating that DGCI "simply cannot tolerate interference or threats of interference in performing our mission for the US Government." (Compl. ¶ 44.) DGCI further responded that it would not yield to Triple Arrow's demands for payment made in conjunction with improper threats of duress. (*Id.*) DGCI's September 8 email included an attachment with a letter addressed to Triple Arrow from DGCI's U.S. counsel demanding that Triple Arrow cease and desist from taking any unlawful and improper actions targeting DGCI's personnel and property. (Compl. ¶ 45.) This letter also reiterated the existence of the MSA's mandatory forum selection clause by stating, "[s]hould you believe for whatever reason that you have legitimate grievance with DGCI, the MSA requires you to take action in the US courts in Virginia, as appropriate." (*Id.*)

On September 15, 2021, Triple Arrow's Iraqi counsel emailed a letter to DGCI and DGCI's counsel alleging that DGCI owed Triple Arrow $9,443,111.24. (Compl. ¶¶ 46-47.) In the letter, Triple Arrow rejected its obligation under the MSA's forum selection clause and stated its intent to bring an action in Iraq to enforce a purported "oral agreement" between the parties. (*Id.*) No such oral agreement exists, as the MSA requires that any modification "must be approved in writing by both Parties." (Compl. ¶ 48, Ex. A at 14.1 (Prior Agreements; Modifications and Waivers).) No such writing exists. Upon information and belief, Triple Arrow's Iraqi counsel

11

appeared in person at DGCI's office in EIA in Iraq and threatened to seize four of DGCI's refueler trucks. (Compl. ¶ 49.)

On September 22, 2021, DGCI's counsel emailed a letter rejecting Triple Arrow's analysis of the terms of the MSA. The letter stated:

> Your analysis in your letter of the jurisdictional requirements under the MSA for any disputes between the parties is legally deficient and is rejected. The terms of the Disputes provisions in Section 13 of the MSA, which govern "any claim, controversy or dispute arising under or relating to this Agreement," are clear, and do indeed require that United States courts in Virginia adjudicate any questions related to any payments allegedly owed by DGCI to Triple Arrow for invoices issued prior to October 2020. These provisions survive the termin[a]tion of the MSA (Section 14.7 (Survival)), and in addition, DGCI's audit rights explicitly apply throughout the term of the MSA and "for a period of three years thereafter." (Section 5.12). Accordingly, DGCI is at all times comporting itself in compliance with the MSA and expects Triple Arrow to do so as well. Your reliance on a fictious and so-called "October Agreement" is misplaced and invalid. The only legal agreement that applies to the relationship between DGCI and Triple Arrow is the MSA.

(Compl. ¶ 50.) DGCI's letter also analyzed the amounts owed from Triple Arrow's post-October 2020 invoices which DGCI paid. (*Id.*) The letter shows that Triple Arrow invoiced DGCI for a total of $10,692,882 after October 2020, and DGCI paid Triple Arrow $11,885,241, resulting in a surplus of $1,192,359 in favor of Triple Arrow. (Compl. ¶ 51.) As to the pre-October 2020 invoices, the letter reiterated that Triple Arrow's negative force protection rating justifies and requires DGCI's ongoing audits "because DGCI cannot—and will not—remit payment to Triple Arrow of monies from the United States Government absent assurance that these monies are properly owed." (Compl. ¶ 52.)

**F.     Triple Arrow Initiates Legal Proceedings in Iraq**

Triple Arrow's Iraqi counsel served DGCI's representative in Iraq with a "Legal Notification" on or about September 23, 2021. (Compl. ¶ 53.) As translated, the Legal Notification

12

states:

> Through this notification, you will have to refund the aforementioned amount [USD 11,093,076] to my client (the company) [Triple Arrow]; otherwise, the legal measures will be taken against your company, such as (registering a law case at the competent courts, banning travel, stopping all services, putting a seizure sign on all your properties, and withdrawing the vehicles of filling aircraft gasoline). (If someone notifies you, don't blame him – an adage).

(Compl. ¶ 54.) This Legal Notification threatens DGCI's personnel and assets. (Compl. ¶ 55.) Triple Arrow's Iraqi counsel emailed a letter to DGCI and DGCI's counsel stating that "there is nothing preventing Triple Arrow from protecting its rights by seeking conservatory and/or provisional measures before the competent Iraqi courts." (Compl. ¶ 56.)

Triple Arrow has since initiated legal proceedings in Iraq seeking $11,093,076 in damages from DGCI related to the fuel purchases and in legal fees. (Compl. ¶ 57.) On September 21, 2021, Judge Qubad Sh. Noori of the Erbil Court of First Instance issued a Legal Notification setting a court hearing in the Iraqi litigation at 9:00 a.m. on November 8, 2021. (Compl. ¶ 58.) Upon information and belief, a Triple Arrow representative in Iraq threatened that the "Asayish," the Kurdish security organization and intelligence service for the Kurdistan Regional Government with control over the EIA, would remove all DGCI's equipment and vehicles from EIA prior to the November 8, 2021 hearing. (Compl. ¶ 59.) With the help of DLA-E and DOD, DGCI has prevented this confiscation of its property at EIA by the Asayish. (Compl. ¶ 60.) The Iraqi proceedings were suspended upon the Court's issuance of the preliminary anti-suit injunction. (Bell Decl. ¶ 11.) It remains unclear to DGCI whether the Iraqi court would enforce the MSA's forum selection and choice of law provisions. (Compl. ¶ 61.)

III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). As a result, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

A. **Declaratory Judgment (Count 1)**

DGCI brought a declaratory judgment action (Count 1) against Triple Arrow to enforce the terms of the MSA. (Compl ¶¶ 62-75.) "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A Court's decision to hear a federal declaratory judgment action is discretionary. *Penn–America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citations omitted)). Therefore, for jurisdiction to be proper, (1) there must be a justiciable "case or controversy" between the parties pursuant to Article III of the United States Constitution, and (2) "the trial court must be satisfied that declaratory relief is appropriate[.]" *Carfax, Inc. v. Red Mountain Techs., et al.*, 119 F. Supp. 3d 404, 417 (E.D. Va. 2015).

*First*, a justiciable case or controversy exists here. A declaratory action will satisfy this requirement where the action arises from a "dispute that is 'definite and concrete, touching the legal relations of parties having adverse legal interests,' and must be 'real and substantial' and 'of a conclusive character.'" *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty, et al.*, 355 F. Supp. 3d 386, 402-03 (E.D. Va. 2018) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted)).

Here, DGCI alleges that an ongoing dispute exists under the MSA regarding the amounts owed by DGCI to Triple Arrow. (*See* Compl. ¶¶ 10, 12.) Triple Arrow brought an action in Iraq claiming that DGCI owes $11,093,076 in damages and legal fees for unpaid invoices predating the termination of the MSA. DGCI is auditing Triple Arrow's invoices that predate their negative force protection rating and disputes that it owes Triple Arrow these damages and fees. And, as relevant here, DGCI argues that Triple Arrow violated the MSA's mandatory forum selection and choice of law provisions by filing suit in Iraq. Therefore, the parties are adverse over whether Triple Arrow breached the MSA, which is a cognizable injury. Triple Arrow's suit in Iraq is suspended in response to this Court's preliminary injunction, and it is not clear whether that court would enforce the mandatory forum selection clause. (Bell Decl. ¶ 11.) DGCI's requested declaratory relief is neither premature nor unwise. Absent any action by this Court, Triple Arrow would be able to proceed with its suit in Iraq. Accordingly, the undersigned finds that a justiciable case or controversy exists between these parties.

*Second*, a declaratory judgment will clarify Defendants' liability in this action. A declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life*

*Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir 1937)). The MSA's forum selection clause requires that any disputes arising from the MSA be brought and litigated in this Court. In this District, forum selection clauses are "presumptively valid and enforceable" if the clause is mandatory. *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018).

The MSA includes a mandatory forum selection clause that it presumptively valid in this District. Therefore, an order declaring that the forum selection clause is valid and enforceable will clarify the dispute between the parties about the applicability of the clause. Such a declaration will preclude Triple Arrow from claiming that the clause does not apply and prevent Triple Arrow from dodging its obligation to litigate in this Court. Accordingly, the undersigned finds that a declaratory judgment is appropriate here to clarify and reinforce that the forum selection clause required claims arising from the MSA to be litigated in this Court.

## IV. REQUESTED RELIEF

Plaintiff DGCI requests that the Court enter an order for declaratory relief and a permanent injunction against Defendant Triple Arrow.

### A.   Declaratory Relief

Plaintiff seeks an order for declaratory relief declaring that "(1) the MSA continues to be valid and enforceable following termination; (2) . . . the MSA's forum selection and choice of law provisions . . . are mandatory and enforceable; and (3) Triple Arrow's actions in Iraq, including initiating litigation . . . , are improper and invalid[.]" (Compl. at 15.) For the reasons articulated above, the undersigned finds that Plaintiff's requested declaratory judgment is appropriate in this case.

### B. Permanent Injunction

The question remains whether Plaintiff DGCI is entitled to a permanent injunction. Specifically, Plaintiff seeks a permanent foreign anti-suit injunction prohibiting Triple Arrow from proceeding with any lawsuits or other legal proceedings against DGCI in Iraq. "It is well settled that federal courts possess the power to enjoin persons subject to their jurisdiction from prosecuting a foreign suit." *Umbro Int'l, Inc. v. Japan Pro. Football League, No.*, No. 6:97-2366-13, 1997 WL 33378853, at *1 (D.S.C. Oct. 2, 1997); *see also BAE Sys.*, 884 F.3d at 479 ("a district court with jurisdiction over the parties may prohibit them from proceeding with a lawsuit in a foreign country").

Judge Trenga previously found that DGCI is entitled to a preliminary anti-suit injunction because DGCI sufficiently demonstrated that (1) it is likely to succeed on the merits; (2) it has or will experience irreparable injury absent injunctive relief; (3) the balance of the equities favor DGCI; and (4) an anti-suit injunction is in the public interest. (Dkt. 39 at 1-2.) Judge Trenga also found that the issuance of the preliminary anti-suit injunction is consistent with principles of international comity. (Dkt. 39 at 2-3.)

Plaintiff now requests that the Court convert the preliminary injunction into a permanent injunction. To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Permanent injunctive relief is appropriate against Defendant Triple Arrow because the above four elements are satisfied.

17

*First*, Plaintiff has demonstrated that it has suffered—and will continue to suffer—irreparable harm. As discussed above, the undersigned determined that Defendant violated the mandatory forum selection clause in the MSA by initiating proceedings in Iraq. Although these proceedings were suspended following the issuance of the preliminary injunction, the parties have not resolved the underlying dispute. (*See* Bell Decl. at ¶ 11.) Judge Trenga's reasoning in issuing a preliminary injunction applies equally here: "[a]bsent injunctive relief, the mandatory forum selection clause becomes a nullity and Plaintiff could become subject to expenses and other consequences that the clause was intended to prevent as well as inconsistent determinations by different courts." (Dkt. 39.) Accordingly, the undersigned finds that Plaintiff has or will experience irreparable injury absent a permanent injunction.

*Second*, other remedies at law are inadequate to compensate Plaintiff. It is difficult to quantify the harm to DGCI resulting from Triple Arrow's violation of the forum selection clause. As Judge Trenga found, "allowing the litigation to proceed in Iraq threatens this Court's jurisdiction, may lead to conflicting or inconsistent adjudications of the same issues and would allow the Defendant to engage in vexatious litigation in order to obtain an unfair advantage in light of the Master Services Agreement's mandatory forum selection clause." (Dkt. 39 at 3.) Further, despite receiving proper service, Defendant failed to respond in any way to this lawsuit. Defendant's lack of an appropriate response demonstrates that there is a near certainty that Defendant will continue to pursue its claim for damages in Iraq or elsewhere. Furthermore, Defendant's failure to respond shows that Defendant is unlikely to cooperate with Plaintiff's requests absent the Court's issuance of a permanent injunction. Therefore, this second factor weighs in favor of converting the preliminary injunction to a permanent injunction.

*Third*, the only "hardship" Defendant would experience from a permanent injunction would be the requirement to follow its contractual obligations and to pursue any claims against DGCI under the MSA in this Court. This apparent hardship, however, does not affect the balancing of interests under this test. *See, e.g., JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 825-26 (E.D. Va. 2007). As Judge Trenga previously found, the balance of the equities "favor DGCI given the injuries that may be experienced by Defendant's breach of a contract, freely entered into and through which it has already received millions of dollars, which appears to constitute in large measure the benefits it is entitled to receive under that contract, which Plaintiff has substantially, if not fully, performed." (Dkt. 39 at 2.) The undersigned accordingly finds that this third factor weighs in favor of granting permanent injunctive relief.

*Finally*, the public interest favors a permanent injunction. This Court found the preliminary injunction to be in the public interest because it is "enforcing the private contract between parties, particularly in the context of this contract involving interests of the United States government and the national defense, and the need to maintain the confidence in the enforceability of private contracts, even though executed overseas." (Dkt. 39 at 2.) The same reasoning applies equally to Plaintiff's request for a permanent injunction. Further, as this Court found with respect to the preliminary injunction, a permanent injunction will not offend notions of international comity. (Dkt. 39 at 3); *see, e.g., Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 887 (9th Cir. 2012) ("where two parties have made a prior contractual commitment to litigate disputes in a particular forum, upholding that commitment by enjoining litigation in some other forum is unlikely to implicate comity concerns at all."). The undersigned accordingly finds that permanent injunctive relief is appropriate and the best means to prevent future harm to Plaintiff because of Defendant's violation of the mandatory forum selection clause and failure to respond to this lawsuit.

## V. RECOMMENDATION

For the reasons articulated above, the undersigned recommends that the Court enter an order granting Plaintiff DGCI Corporation's Motion for Default Judgment and Permanent Injunction (Dkt. 45), thereby entering default judgment in favor of Plaintiff and against Defendant Triple Arrow. The undersigned recommends that the Court enter a declaratory judgment in favor of DGCI pursuant to 28 U.S.C. § 2201(a) declaring that (1) the MSA between continues to be valid and enforceable following termination; (2) the requirements of the MSA's forum selection and choice of law provisions are mandatory and enforceable; and (3) Triple Arrow's prior actions in Iraq related to this dispute, including initiating litigation in Iraqi courts, are improper and invalid. Further, the undersigned recommends that the Court convert the preliminary foreign anti-suit injunction into a permanent foreign anti-suit injunction, enjoining Defendant from proceeding with any lawsuits or other proceedings against DGCI in Iraq or any other jurisdiction other than this Court.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

August 18, 2022
Alexandria, Virginia